**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **PETER GRIGG,** | § § § § § § § § § § § § § | |
| **Plaintiff,** | | |
| **v.** | | **Civil Action No. 4:23-cv-624-ALM-KPJ** |
| **JEREMY MCKEY,** | | |
| **Defendant.** | | |

**REPORT AND RECOMMENDATION
OF UNITED STATED MAGISTRATE JUDGE**

Pending before the Court are the following motions:

- Plaintiff Peter Grigg's ("Plaintiff") Motion for Default Judgment and Proposed Order (the "Motion for Default Judgment") (Dkt. 4), to which Defendant Jeremy McKey ("Defendant") filed a response (Dkt. 7);

- Defendant's Motion to Dismiss Pursuant to Rule 12(b)(5) or Alternatively Leave to File an Answer (the "Motion to Dismiss") (Dkt. 5), to which Plaintiff filed a response (Dkt. 9); and

- Defendant's Omnibus Motion to Compel Arbitration, or Alternatively, Motion to Dismiss or Motion for More Definite Statement (the "Motion to Compel") (Dkt. 13), to which Plaintiff filed a response (Dkt. 14).

For the reasons that follow, the Court recommends that the Motion for Default Judgment (Dkt. 4) be **DENIED**, the Motion to Dismiss (Dkt. 5) be **DENIED AS MOOT**, and the Motion to Compel (Dkt. 13) be **GRANTED**.

## I.    BACKGROUND

On July 3, 2023, Plaintiff, proceeding *pro se*, filed a complaint (the "Complaint") (Dkt. 1) alleging causes of action for negligence, false representation, breach of contract, and fraud. Dkt. 1 at 4. Specifically, Plaintiff alleges that he hired Defendant to represent him in a personal injury

1

case. *Id.* Plaintiff avers that "after Defendant lost mediation," Defendant withdrew as counsel and

the "case [was] lost." *Id.* On July 3, 2023, Plaintiff also filed a Statement of Inability to Afford

Payment of Court Costs or an Appeal Bond (Dkt. 3).

On December 4, 2023, Plaintiff filed the Motion for Default Judgment (Dkt. 4), wherein

he asserts that summons was served on Defendant on August 22, 2023. Dkt. 4 at 1. On

December 18, 2023, Defendant filed his response to the Motion for Default Judgment (Dkt. 4),

wherein he asserts that "Plaintiff still has not served Defendant" and "[i]n fact, a review of the

Court's docket reveals that Plaintiff has not even requested a [s]ummons be issued." Dkt. 7 at 3.

On December 8, 2023, Defendant filed the Motion to Dismiss (Dkt. 5) asserting that

Plaintiff has not served him and thus, the case should be dismissed pursuant to Rule 12(b)(5).

Dkt. 5 at 1. On December 26, 2023, Plaintiff responded to the Motion to Dismiss (Dkt. 5) arguing

that the case was "originally filed in Collin county district Court [in] May 2023 and transferred by

TDJ to the Sherman division [in] July 2023." Dkt. 9 at 1. Plaintiff further argues that "Defendant

[was] duly served[ with] ***ALL NECESSARY DOCUMENTATION***" in the Collin County District

Court case, and that Defendant "would have been made aware of this case by the Federal court"

when it was transferred. *Id.* at 1–2.

On December 19, 2023, the Court construed Plaintiff's Statement of Inability to Afford

Payment of Court Costs or an Appeal Bond (Dkt. 3) as a motion to proceed *in forma pauperis* and

granted Plaintiff's request. Dkt. 8. On January 9, 2024, summons was issued for the first time in

this case. *See* Dkt. 11. On January 29, 2024, the summons was executed on Defendant. Dkt. 12.

On February 13, 2024, Defendant filed the Motion to Compel (Dkt. 13), wherein he argues

that the claims asserted by Plaintiff are subject to a binding arbitration agreement. Dkt. 13-1 at 6–

7. Defendant also argues that "if the Court denies the request to send this case to Arbitration,

Plaintiff's lawsuit should be dismissed as his pleading is wholly insufficient and inadequate." *Id.*

at 7. On February 23, 2024, Plaintiff filed his response to the Motion to Compel (Dkt. 13), wherein

he "objects to Arbitration" because Defendant "voided" his right to arbitration by breaching the

contract and "fraudulently cash[ing] a personal cheque to . . . [P]laintiff." Dkt. 14 at 2. Plaintiff

also argues that Defendant had the right to arbitrate prior to the filing of the instant case and cannot

now invoke the right to arbitrate. *Id.*

## II.    LEGAL ANALYSIS

### A.    Motion for Default Judgment (Dkt. 4)

#### 1.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which

default may be entered against a party, as well as the procedure to seek the entry of default

judgment. *See* FED. R. CIV. P. 55. The Fifth Circuit requires a three-step process for securing a

default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a

default occurs when a defendant has failed to plead or otherwise respond to the complaint within

the time required by Rule 12 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *New

York Life Ins.*, 84 F.3d at 141. Next, an entry of default may be entered by the clerk when the

default is established by affidavit or otherwise. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d

at 141. Third, a plaintiff may then apply to the clerk or the court for a default judgment after an

entry of default. *See* FED. R. CIV. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

#### 2.    Analysis

Here, Plaintiff has not requested an entry of default. Plaintiff cannot obtain a default

judgment until a default has been entered. *See New York Life Ins.* 84 F.3d at 141; *see also

Accredited Sur. & Cas. Co., Inc. v. Landlord's Daiquiri Den, LLC*, No. 22-cv-591, 2023 WL

11761514, at \*4 (E.D. Tex. July 26, 2023) ("[C]ourts will analyze whether to enter default judgment only if the plaintiff has first satisfied certain procedural requirements."); *Lee v. Brotherhood of Maint. of Way Emps.-Burlington N. Sys. Fed'n*, 139 F.R.D. 376, 380 (D. Minn. 1991) ("[T]he Court notes that an entry of default is a prerequisite to a default judgment under Rule 55(b), and that no entry of default has been made in this case."). Thus, before reaching the merits of Plaintiff's request for default judgment against Defendant, the Court must determine whether Defendant is in default. The Court finds that Defendant is not in default and, thus, an entry of default against him would not be appropriate.

In the Motion for Default Judgment (Dkt. 4), Plaintiff argues that he is entitled to default judgment in this case because he served Defendant with "[s]ummons, [p]etition[,] and [a]ffidavit" on August 22, 2023, and that the Clerk of Court had a "[n]o [r]eturn of [s]ummons" on November 21, 2023, which "exceeds the 21 days for [a] reply to [s]ummons." Dkt. 4 at 1. In response, Defendant argues that Plaintiff is not entitled to default judgment because Plaintiff did not serve him with a copy of the complaint and summons or obtain a waiver of service. Dkt. 7 at 6. The Court agrees with Defendant and finds that Plaintiff had not served Defendant with summons at the time of the Motion for Default Judgment (Dkt. 4). The Motion for Default Judgment (Dkt. 4) was filed on December 4, 2024, before any summons had been issued in this case. Indeed, summons was issued for the first time in this case on January 9, 2024. Dkt. 11. This summons was executed on January 29, 2024, and Defendant filed the Motion to Compel (Dkt. 13) on February 13, 2024. *See* Dkts. 12–13. It is clear from the record that Plaintiff's contention that the summons was executed on Defendant on August 22, 2023 is incorrect. Thus, Defendant was not in default at the time the Motion for Default Judgment (Dkt. 4) was filed because he had not been served with summons in this case.

A default judgment is only appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." *See* FED. R. CIV. P. 55(a). Defendant has demonstrated the requisite intent to defend against Plaintiff's claims by filing the Motion to Dismiss (Dkt. 5)—arguing Plaintiff had not served Defendant with process in this case—and the Motion to Compel (Dkt. 13)—arguing that Plaintiff's claims are subject to an agreement to arbitrate. *See* Dkts. 5; 13. Thus, Rule 55 provides Plaintiff with no relief, and entry of default is inappropriate. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 277 (5th Cir. 1989) ("The filing of a motion to dismiss is normally considered to constitute an appearance . . . ." (citations omitted)); *Smith v. Westwood Auto Sales, LLC*, No. 22-cv-2394, 2023 WL 9234502, at *1 n.1 (S.D. Tex. Sept. 28, 2023) (denying the plaintiff's motion for default judgment following the defendant's appearance on the record through its motion to compel arbitration). The Motion for Default Judgment (Dkt. 4) should be denied.

**B.      Motion to Dismiss (Dkt. 5)**

The Motion to Dismiss (Dkt. 5) is premised on Plaintiff's failure to secure summons and issue service. *See* Dkt. 5 at 4. Plaintiff has now secured summons and returned summons executed as to Defendant. *See* Dkt. 12. Accordingly, Defendant's argument regarding dismissal pursuant to Rule 12(b)(5) in the Motion to Dismiss (Dkt. 5) is moot. Defendant does raise new arguments for dismissal pursuant to Rules 12(b)(4) and 12(b)(5) in the Motion to Compel (Dkt. 13) based on Plaintiff's failure to properly serve. *See* Dkt. 13-1 at 21. However, these arguments are raised in the alternative to Defendant's primary request that the case be sent to arbitration. Because the Court finds that the case should be sent to arbitration, the Court does not reach Defendant's arguments regarding the impropriety of service.

C.      **Motion to Compel (Dkt. 13)**

1.      **Legal Standard**

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The FAA provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. Courts perform a two-step inquiry to determine whether arbitration must be compelled. *See Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009) (citation omitted). First, the court must determine whether the parties agreed to arbitrate the dispute. *See id.* This first inquiry is divided into two subparts: (a) whether there is a valid agreement to arbitrate; and (b) whether the dispute in question falls within the scope of that arbitration agreement. *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008)). Second, the court must determine whether any applicable federal statute, policy, or waiver renders the claims nonarbitrable. *See id.* (quoting *Sherer*, 548 F.3d at 381).

2.      **Arbitration Agreement**

"Arbitration agreements are contracts" and "[w]hether an enforceable agreement to arbitrate exist[s] . . . is a question of contract formation," which is "guided by ordinary state contract law principles governing the formation of contracts." *Vollmering v. Assaggio Honolulu, LLC*, No. 22-cv-2, 2022 WL 6246881, at *6 (S.D. Tex. Sept. 17, 2022) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)), *R. & R. adopted*, 2022 WL 6250679 (S.D. Tex. Oct. 6, 2022). The party seeking to compel arbitration "bears the burden of showing, by a

preponderance of the evidence, that the arbitration agreement exists." *Id.* (citing *GC Servs. Ltd. P'ship v. Little*, No. 19-1180, 2019 WL 5425032, at *6 (S.D. Tex. Oct. 23, 2019)).

Here, Defendant asserts that "[o]n or about June 20, 2019, Plaintiff contracted with [Defendant's] Law Office to represent him in his personal injury case." Dkt. 13-1 at 7. Defendant attaches the agreement between Plaintiff and Defendant's law office (the "Contract"), which includes the following arbitration clause:

> Client agrees that any dispute whatsoever arising out of this agreement, including disputes regarding fees or the proper and reasonable rendition of legal services will be resolved by arbitration to take place before an Arbitrator that is selected by and in accordance with the American Arbitration Association ("AAA") (more information regarding the Arbitration process with AAA can be found on the AAA website at https://www.adr.org). Client and McKey Law Firm agree that the arbitrator will apply Texas law to any dispute relating to this agreement. Client understands that there are benefits and advantages to arbitration including oftentimes arbitration can be cheaper and save more time than a judicial proceeding such as a jury trial. However, client understands that in arbitration, both parties are waiving their right to a jury trial and remedies potentially afforded by appeals should a party desire to appeal. Client specifically has read, understands and agrees to the terms set fort [sic] this in paragraph.

Dkt. 13-2 at 5–6. Plaintiff does not dispute the existence of the Contract or that the Contract established a valid arbitration agreement between Plaintiff and Defendant's law office. *See* Dkt 14 at 2. Accordingly, the Court finds that there is a valid agreement to arbitrate between Plaintiff and Defendant's law office. But the law office is not a party in this case and Defendant did not sign the Contract in his individual capacity. Thus, the Court evaluates whether Defendant, a nonsignatory to the Contract, may compel arbitration pursuant to the agreement contained in the Contract.

Defendant asserts that he can enforce the arbitration clause pursuant to the intertwined claims theory. *See* Dkt. 13-1 at 10–11. "The 'intertwined claims' theory governs motions to compel arbitration when a signatory-plaintiff brings an action against a nonsignatory-defendant asserting

claims dependent on a contract that includes an arbitration agreement that the defendant did not sign." *Janvey v. Alguire*, 847 F.3d 231, 242 (5th Cir. 2017) (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527–28 (5th Cir. 2000)). This theory applies when the nonsignatory defendant has a "close relationship" with one of the signatories; specifically, courts look for a "tight relatedness of the parties, contracts, and controversies" and claims that are "intimately founded in and intertwined with the underlying contract obligations." *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (citations omitted). Here, Defendant asserts that he is the sole owner and operator of the law office. Dkt. 13-1 at 11. Further, the parties agree that Defendant represented Plaintiff in the personal injury lawsuit which is the subject matter of the Contract. *See* Dkts. 1-1 at 2–5; 13-1 at 8. In this lawsuit, all of Plaintiff's allegations concern acts taken by Defendant during his representation of Plaintiff in the personal injury lawsuit. *See* Dkts. 1 at 4; 1-1 at 2–5. The Court finds Defendant has the requisite close relationship with his law office and the claims asserted by Plaintiff are intimately founded in and intertwined with the Contract. Thus, Defendant can enforce the arbitration agreement against Plaintiff under the theory of intertwined claims, provided Plaintiff's claims fall within the scope of the agreement. *See, e.g., Ultra Lane Mgmt. v. McKellar*, No. 17-cv-76, 2017 WL 4506813, at *4 (E.D. Tex. June 30, 2017); *Manchester Tex. Fin. Grp., LLC v. Badame*, No. 19-cv-9, 2019 WL 4228370, at *8 (W.D. Tex. Sept. 4, 2019), *R. & R. adopted sub nom.*, *Manchester Tex. Fin. Grp., LLC v. AECOM, Inc.*, 2020 WL 10056216 (W.D. Tex. Jan. 10, 2020).

Having found an enforceable arbitration agreement between the parties, the Court must now determine whether Plaintiff's claims come within the arbitration clause. The arbitration clause states that it covers "any dispute whatsoever arising out of this agreement." Dkt. 13-2 at 5. Plaintiff's allegations in the Complaint (Dkt. 1) concern the actions taken by Defendant during his

representation of Plaintiff in the personal injury case which was the purpose of the Contract. *See* Dkts. 1-1; 13-2. Because all of Plaintiff's claims arise out of Defendant's representation of Plaintiff, his claims are clearly within the scope of the arbitration agreement. Accordingly, the Court finds that the parties agreed to arbitrate Plaintiff's claims.

### 3.    Plaintiff's Arguments in Opposition

Plaintiff argues that the arbitration agreement is not enforceable for two reasons. First, Plaintiff argues that the Contract is "void" due to Defendant's actions of breach and fraud. Dkt. 14 at 2. This argument fails for two reasons: (1) the arbitration clause is severable from the remainder of the Contract; and (2) unless the challenge is to the arbitration clause itself, the issue of the Contract's validity is considered by the arbitrator in the first instance—not the Court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *see also Gardner v. Gary Sinise Found.*, No. 23-cv-99, 2024 WL 477516, at *4 (E.D. Tex. Feb. 7, 2024). Because the arbitration clause is severable from the Contract, the issue of whether Defendant breached the Contract or committed fraud by cashing a check made out to Plaintiff does not affect the enforceability of the arbitration clause. *Gardner*, 2024 WL 477516, at *4 ; *Baldwin v. Beeche*, No. 20-cv-639, 2021 WL 1377149, at *3 (E.D. Tex. Apr. 12, 2021).

Second, Plaintiff argues that Defendant had the right to arbitrate prior to legal action being initiated, but not after. Dkt. 14 at 2. Looking to the arbitration agreement, the Court does not find any language restricting the time for which a party may invoke its right to arbitrate. *See* Dkt. 13-2 at 5–6. Accordingly, the Court interprets Plaintiff's argument here to be that Defendant waived his right to seek arbitration. "The right to arbitrate a dispute, like all contract rights, is subject to waiver." *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 542 (5th Cir. 2016) (quoting *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009)) (internal quotation marks omitted). In

the Fifth Circuit, a party waives its right to seek arbitration when it "substantially invokes the judicial process."[1] *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999)). "To invoke the judicial process, a party 'must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (quoting *Republic Ins. Co.*, 383 F.3d at 344). A motion to dismiss seeking a decision on the merits will typically substantially invoke the judicial process, whereas "filing a mere 'perfunctory motion to dismiss'" does not substantially invoke the judicial process. *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (quoting *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995)).

Prior to the Motion to Compel (Dkt. 13), Defendant filed the Motion to Dismiss (Dkt. 5) pursuant to Rule 12(b)(5) for insufficient service of process. *See* Dkt. 5. This is not a substantial invocation of the judicial process because it does not seek a decision on the merits. *See Williams v. Fid. Warranty Servs., Inc.*, No. 19-1537, 2020 WL 2086655, at *2 (S.D. Tex. Apr. 30, 2020) (finding the defendant's motion to dismiss did not substantially invoke the judicial process because it relied solely on the plaintiff's "alleged failure to comply with the court's order to provide statutory pre-suit notice"); *cf. In re Mirant*, 613 F.3d at 589 (holding the defendant substantially

---

[1] Previously, the Fifth Circuit held a "a party waives its right to arbitrate if it (1) substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014) (internal citations and quotation marks omitted). However, following the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the prejudice inquiry at the second step has been eliminated. The *Morgan* Court struck the prejudice requirement adopted by several Circuits, including the Fifth Circuit, and made clear that "a court must hold a party to its arbitration contract just as the court would to any other kind" and could not "devise novel rules to favor arbitration over litigation." *Morgan*, 596 U.S. at 418 (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218–221 (1985)). Accordingly, courts are required to consider whether "ordinary procedural rule[s]" such as "waiver or forfeiture . . . counsel against enforcement of an arbitration contract" and must bear in mind that "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* (citations omitted).

invoked the judicial process when it filed motions to dismiss based partially on affirmative defenses of waiver and release). Thus, Defendant has not waived his right to seek arbitration.

Because Plaintiff has failed to meet his burden of establishing that the arbitration agreement should be invalidated, the Court finds that this case should be referred to arbitration. *See* 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) ("[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991))).

### 4.    Stay

Defendant moves the Court to dismiss this case upon a finding that all of Plaintiff's claims are arbitrable. *See* Dkt. 13-1 at 8. However, the Supreme Court recently addressed the question of "whether § 3 permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024). The Supreme Court held that "[i]t does not." *Id.* In reaching this holding, the Supreme Court reasoned that the language "shall . . . stay" in Section 3 "overrides any discretion a district court might otherwise have had to dismiss a suit when the parties have agreed to arbitration." *Id.* at 477. The Supreme Court also emphasized:

> [S]taying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts. The FAA provides mechanisms for courts with proper jurisdiction to assist parties in arbitration by, for example, appointing an arbitrator, see 9 U.S.C. § 5; enforcing subpoenas issued by arbitrators to compel testimony or produce evidence, see § 7; and facilitating recovery on an arbitral award, see § 9. Keeping the suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee to invoke the

FAA's procedural protections. District courts can, of course, adopt practices to minimize any administrative burden caused by the stays that § 3 requires.

*Id.*

The Supreme Court's decision was issued after the parties briefed the issues now before the Court; accordingly, neither party addresses the effect of *Smith* on the instant case. Plaintiff, proceeding *pro se*, does not ask the Court to stay this matter should the parties be ordered to arbitrate. Rather, Plaintiff "objects to compelled arbitration" and "requests that this case proceed to a fair and just trial." *See* Dkt. 14 at 5. Given Plaintiff's *pro se* status and desire that this case remain before the Court, as well as the benefits of staying a case pending arbitration, the Court finds that the better course of action is to stay this case pending arbitration. Thus, the Court recommends that the case be stayed pending arbitration.

## III.    RECOMMENDATION

For the foregoing reason, the Court recommends that the Motion for Default Judgment (Dkt. 4) be **DENIED**, the Motion to Dismiss (Dkt. 5) be **DENIED AS MOOT**, and the Motion to Compel (Dkt. 13) be **GRANTED**. Specifically, the Court recommends that the parties be compelled to binding arbitration, and this suit be stayed pending the resolution of arbitration.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been

served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 16th day of August, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE